UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SANDRA BRADY,

                              Plaintiff,

        -against-                                    1:04-CV-1126
                                                     (LEK/DRH)
DEBORAH DAMMER, DEBORAH DOMINSKI,
MATTHEW GUINANE, ANN FIORELLO,
WILLIAM MYERS, MARILYN KALTENBORN,
MICHAEL PARADA, CARLA ADSIT-VASSARI,
ROBIN GRAY, THOMAS HEINZ, *and*
ANDREW ERISTOFF,

                              Defendants.

_____

## MEMORANDUM-DECISION AND ORDER[1]

        Before the Court is a Motion for summary judgment, pursuant to Rule 56, filed by

Defendants Deborah Dammer, Deborah Dominski, Matthew Guinane, Ann Fiorello, William

Myers, Marilyn Kaltenborn, Michael Parada, Carla Adsit-Vassari, Robin Gray, Thomas Heinz, and

Andrew Eristoff. (collectively, "Defendants").  Defs.' Mot. for Summ. J. (Dkt. No. 57) (hereinafter

"MSJ"); Fed. R. Civ. P. 56.  The action arises out of Plaintiff Sandra Brady's ("Plaintiff" or

"Brady") employment with the New York State Department of Taxation and Finance

("Department"), and includes events occurring between 2001 and 2004.  See Am. Compl. (Dkt. No.

20).  Each Defendant is a current or former employee of the Department.  Plaintiff's Amended

Complaint alleges thirteen separate causes of action under the federal constitution, state

constitution, and federal and state statutes.  Id. at 18-21.

_____

        [1]  For printed publication by the Federal Reporters.

# I. BACKGROUND

## A. Procedural History

Plaintiff Sandra Brady initiated this action against Defendants on September 27, 2004.  Dkt. No. 1.  Defendants filed a Motion to dismiss the Complaint.  Defs.' Mot. to Dismiss (Dkt. No. 3).  In a Memorandum-Decision and Order on August 3, 2005 ("2005 Order"), the Court dismissed several of Plaintiff's claims with prejudice, dismissed other claims without prejudice, and, because "Plaintiff's pleading is a lengthy, over-inclusive Complaint that asserts every cause of action that counsel could dream up," *sua sponte* struck the remaining portions of the Complaint for failure to comply with Rule 8.  2005 Order at 23-25 (Dkt. No. 19).  Plaintiff filed an Amended Complaint on August 17, 2005.  Am. Compl.  Defendants filed an Answer, interposing an array of defenses that are discussed at length below, on October 4, 2005.  Answer at 8-9 (Dkt. No. 31).  Lengthy discovery proceedings before the Honorable David R. Homer, U.S. Magistrate Judge, ensued.  Defendants filed the instant Motion for summary judgment on June 15, 2007.  Defs.' MSJ.  The Motion is now ripe for consideration by the Court.

## B. Factual Background

Plaintiff Sandra Brady was employed as a Sales Tax Technician in the New York State Department of Taxation and Finance throughout the period in which the following events occurred, and continuously until her retirement in 2006.  Brady Dep. (Dkt. No. 57, Attachs. 6-8).  Plaintiff claims she was wrongfully denied a promotion in June 2001.[2]

---

[2] The details surrounding this factual allegation need not be discussed in greater detail because, as discussed in the Court's 2005 Order and *infra*, the statute of limitations bars all claims that accrued prior to September 27, 2001.  See 2005 Order at n.4.

Plaintiff claims that in October 2001, Defendant Ann Fiorello "began treating plaintiff differently than other employees" in retaliation for a complaint against one of Fiorello's supervisors that Plaintiff had filed with the Affirmative Action Administrator, Ellen Mindel.  Am. Compl. ¶ 10. Plaintiff subsequently filed a similar complaint against Fiorello.  Then, on December 19, 2001, Plaintiff left work without personally notifying or seeking permission from her direct supervisor, Defendant Ann Fiorello.  Plaintiff had informed a coworker that she was leaving, who relayed the information to Fiorello.  At Plaintiff's request, the coworker also told Fiorello that Plaintiff told him that she had left a note to that effect, but Fiorello did not find a note.  Fiorello contacted the Department's Labor Relations Bureau for advice with regard to the imposition of discipline on Plaintiff for the absence.  At the suggestion of the Labor Relations Bureau staff, Fiorello met with Plaintiff on December 26, 2001.  Plaintiff agreed to the need to notify management prior to leaving work.  No formal disciplinary action was taken against Plaintiff as a result of this absence.

On December 27, 2001, Plaintiff left work after informing Fiorello that she was ill.  Plaintiff also provided to Fiorello a note from an on-site nurse, who had recommended that she leave work. Plaintiff told Fiorello that she might need to be absent until the middle of the following week.  On December 28, 2001, Fiorello informed Plaintiff that she needed to bring medical documentation for the absence with her when returning the following week, or by the following Friday if she did not return during that week.  Plaintiff did not return to work and subsequently, on January 8, 2002, submitted a reasonable accommodation request under the Americans With Disabilities Act to the Department's Affirmative Action Office.  In this request, Plaintiff asked for a transfer away from the Technical Services Department in order to obtain a supervisor other than Fiorello, who she claimed was aggravating her anxiety disorder.  Plaintiff provided supporting documentation from

her treating psychologist and physician, who opined that Plaintiff's ongoing conditions of

depression and anxiety were being exacerbated by her work environment, and that this environment

was causing Plaintiff to experience symptoms of labile hypertension.

In a letter dated January 16, 2002, signed by Defendant Dammer in her capacity as Director

of Human Resources Management, Plaintiff was notified that the documentation was sufficient and

that she was authorized for up to three months of sick leave.  The letter stated further that Defendant

Dammer had received Plaintiff's reasonable accommodations request and that, in accordance with

section 72 of the New York Civil Service Law, Plaintiff would need to undergo an examination

with the Department of Civil Service's Employee Health Service to determine her fitness to return

to work and the reasonableness of the requested relocation away from the Technical Services

Department.  Brady Dep. Exh. 7 (Dkt. No. 57, Attach. 8).[3]  Defendant Guinane, Assistant Director

of Labor Relations, sent a form to the Employee Health Services requesting the exam.  On January

30, 2002, Plaintiff was examined by a physician and a psychiatrist.  Under section 72, if the

examining doctor determines an employee is unable to perform her position, the doctor may

recommend that the employee is placed on "Involuntary Leave."  N.Y. Civ. Serv. § 72.  Here, the

examining medical officers recommended that Plaintiff could return to work but recommended

transferring her to a different supervisor.

On February 13, 2002, the Department granted Plaintiff's ADA request, giving her a choice

of two offices.  Plaintiff chose the Sales Tax Desk Audit.  She returned to work on February 14,

---

[3] Exhibit B to Defendants' memorandum of law consists of the numerous documents that were used as Defendants' exhibits during Brady's deposition testimony; each document is labeled with an individual exhibit number.  See Dkt. No. 57, Attach. 9.  Hereinafter, each of these documents will be cited according to its individual exhibit number, abbreviated as "Brady Dep. Exh.__."

under the supervision of Michael Bond, who was supervised by Defendant Adsit-Vassari.  It is undisputed that Plaintiff was able to perform all of her duties during the time that she worked under Adsit-Vassari, and received positive work evaluations during that time.  Plaintiff filed another reasonable accommodation request asking that she be required to do only limited traveling due to her anxiety.  This request was granted.

Around this time, Plaintiff claims Defendant Adsit-Vassari prohibited her union representative, Lawrence Gorski, from visiting her at her work station in retaliation for the reasonable accommodation request.  She also claims that Defendants Guinane, Dammer, and Dominski "attempted to have her new supervisors discipline plaintiff for not fulfilling her job duties," and that they disciplined her when her new supervisor refused to do so.  Defendants deny these allegations.

On May 24, 2002, Plaintiff filed a discrimination complaint against Defendant Guinane with the Department's Affirmative Action Office.  The complaint alleged that the section 72 exam violated various rights, including her ADA rights.  On July 9, 2002, Plaintiff filed discrimination complaints against Defendants Dammer and Dominski for allegedly retaliating against her for filing the complaint on May 24, 2002.  On July 11, 2002, Plaintiff filed discrimination complaints "against Defendants Kaltenborn (retaliation for having filed a Worker's [sic] Compensation claim), Parada (retaliation for having filed a Worker's [sic] Compensation claim) and Meyers (retaliation by misrepresenting that Plaintiff had accessed his personal computer files)."  Defs.' Stmnt. Mat Facts at 7.  On July 26, 2002, Plaintiff lodged discrimination complaints against Defendants Gray, Guinane, Dominski, and Dammer, alleging that the request for medical documentation regarding Plaintiff's work absence in late December was an act of retaliation against her for filing a Workers'

5

Compensation claim.

## II.  STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Beard v. Banks, 548 U.S. 521, ---, 126 S. Ct. 2572, 2578 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation omitted).  The nonmoving party "may not rest upon the mere allegations or denials" of the pleadings; bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56(e); Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summar y judgment."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  A court is required to enter summary judgment "after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial.'"  Beard, 126 S.Ct. at 2578 (quoting Celotex, 477 U.S. at 322).


### III.  DISCUSSION

**A.  Americans With Disabilities Act**

Plaintiff invokes the Americans with Disabilities Act (ADA) as grounds for several causes

of action.  Am. Compl. at 19-21.  The Court has generously construed the Amended Complaint as

an attempt to utilize Title I, Title II, and Title V of the ADA.  Nevertheless, the Court finds that

Plaintiff has failed to produce evidence suggesting that a genuine issue of material fact exists as to

the elements of a claim under any ADA provision.


**1.  Title I**

Title I prohibits a state employer from "discriminat[ing] against a qualified individual with a

disability because of the disability in regard to job application procedures, the hiring, advancement,

or discharge of employees, employee compensation, job training, and other terms conditions, and

privileges of employment."  42 U.S.C. § 12112(a), *quoted in* Board of Trustees of the Univ. of

Alabama v. Garrett, 531 U.S. 356, 360-61 (2001).  In Garrett, the Supreme Court held that the

Eleventh Amendment bars suits by state employees against a state for money damages arising from

violations of Title I of the ADA.  Garrett, 531 U.S. at 360.  It is clearly established that when an

action against a state for money damages is barred by the Eleventh Amendment, a suit against a

state officer in his or her official capacity seeking money damages is likewise barred, because "the real party in interest is the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citation omitted). Thus, Plaintiff's Title I claim against Defendants is barred to the extent that she seeks monetary relief from Defendants in their official capacities as employees of the State of New York.

Furthermore, this Court's 2005 Order dismissed all claims brought under the ADA against Defendants in their individual capacities. See 2005 Order at 18. Thus, Plaintiff's claims for money damages under Title I cannot survive the present Motion for summary judgment.

To the extent that Plaintiff seeks declaratory relief under Title I, the claim is barred because Plaintiff failed to comply with the administrative exhaustion requirement of Title I. See 42 U.S.C. § 12117. Like a Title VII claimant, a plaintiff must bring a disability discrimination claim to the EEOC prior to filing a Title I complaint in federal court. Id. Plaintiff did not pursue a claim with the EEOC for any of the allegedly discriminatory acts upon which she is now attempting to ground her Title I claim, and she has not suggested any reason that this requirement should be waived or tolled on equitable grounds. Brady Dep. at 207; Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 398 (1982). Therefore, her Title I claim is barred in its entirety.

### 2. Title II

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. From the pleadings, it appears that Plaintiff has attempted to utilize Title II as a basis for her claim that Defendants discriminated against her in employment. This pleading assumes that Title II reaches discrimination committed by a public employer against an employee.

If this claim does fall within the proper scope of Title II, it enables Plaintiff to avoid having the claim barred for failure to file an EEOC claim, because no such administrative exhaustion scheme applies to Title II claims.

There is no clear answer to whether or not this claim is valid under Title II.  This claim actually raises two separate threshold questions: (1) whether the Eleventh Amendment bars a claim based on the specific conduct Plaintiff alleges; and (2) whether employment discrimination is conduct prohibited by Title II.  In United States v. Georgia, the Supreme Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  546 U.S. 151, 159 (2006) (emphasis in original); see also Tennessee v. Lane, 541 U.S. 509, 518 (2004).  For conduct that does not violate the Fourteenth Amendment but does violate Title II, the Supreme Court directed district courts to determine, on a claim-by-claim basis, "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  Id. See also Garcia v. State Univ. of New York Health Sci. Ctr., 280 F.3d 98, 110-112 (2d Cir. 2001); Olson v. State of New York, 2007 WL 1029021, *7 (E.D.N.Y. Mar. 30, 2007) (citing cases and describing that district courts in the Second Circuit have "adopted divergent positions" about how to evaluate conduct that violates Title II but not the Fourteenth Amendment).

The second unresolved issue, which the Supreme Court explicitly declined to decide in Garrett, is whether Title II is available for a claim of employment discrimination.  Garrett, 531 U.S. at 360 n.1.  Since Garrett was decided, this question has not been resolved by the Second Circuit, and there is a split among the circuits, and between district courts within the Second Circuit, as to the proper answer.  See, e.g., Fleming v. State Univ. of New York, 502 F. Supp. 2d 324, 330-334

9

(E.D.N.Y. 2007) (citing cases).

Evaluating the present Motion, the Court can avoid delving further into those issues because it is clear that Plaintiff cannot establish a prima facie case of employment discrimination on the basis of disability.  To establish the prima facie case, Plaintiff must come forth with evidence that would allow a reasonable jury to find that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability.  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006) (citation omitted).

Putting the other elements aside,[4] Plaintiff's claim must fail because there is no evidence in the record to support a factual finding that she suffered adverse employment action because of her alleged disability.  Plaintiff's Amended Complaint and opposition papers abound with accusations that various Defendants retaliated against her for filing discrimination claims and reasonable accommodation requests, but nowhere does Plaintiff assert that she was subject to an adverse employment action by any Defendant because of her disability.  See Am. Compl. at ¶¶ 84, 93-95, 118-120; see also Pl.'s Resp. Mem. at 3-4 (Dkt. No. 61) ("Plaintiff submitted a reasonable accommodation [request] under the Americans with Disabilities Act . . . . Shortly after submitting this request, in January 2002, plaintiff was subject to an adverse employment action by defendants Dammer, Dominski and Guinane in that she was placed upon involuntary leave . . . . [and ordered] to submit to examinations pursuant to New York Civil Service law § 72."; "Further retaliatory

---

[4] Defendants concede that Plaintiff was qualified to perform the essential functions of her position within the Department.  Defs.' MSJ Mem. at 16 (Dkt. No. 57).

action was taken after she filed her request for a reasonable accommodation . . . .").  In her

deposition, Plaintiff did not testify that any of the allegedly adverse employment actions were taken

because of her disability; rather, she repeated her accusations that Defendants took the actions in

retaliation for exercising her rights.  See, eg., Brady Dep. at 88, 89 (". . . then I asked for a

reasonable accommodation, and basically in retaliation they want to have [] my fitness checked.")

Therefore, Plaintiff's disability discrimination claim fails because no genuine issue of fact exists as

to this element of the prima facie case.

### 3.  Title V

Plaintiff claims that Defendants retaliated against her for exercising her right to request

reasonable accommodations under the ADA.  Am. Compl. at 20.  Title V of the ADA provides that

"[n]o person shall discriminate against any individual because such individual has opposed any act

or practice made unlawful by this chapter or because such individual made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this

chapter."  42 U.S.C. § 12203(a).

As discussed *supra* in relation to Plaintiff's Title II claim, in the wake of <u>Garrett</u> and

<u>Georgia</u> district courts within the Second Circuit have reached conflicting conclusions about the

extent to which the Eleventh Amendment bars official capacity suits against state officials for

money damages.  <u>See</u> *supra* III.A.2.  However,  as with the Title II claim, the Court does not need to

reach this question because the facts alleged by Plaintiff do not constitute a prima facie case of

retaliation under Title V.

A prima facie case of retaliation under the ADA requires plaintiff to establish that "(1) the

employee was engaged in an activity protected by the ADA, (2) the employer was aware of that

11

activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) (citations omitted).  Requesting a reasonable accommodation is a protected activity under Title V.  See Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148-49 (2d Cir. 2002).  "[A] plaintiff need not establish that the conduct he opposed was actually a violation of the [ADA] so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." Sarno, 183 F.3d at 159 (internal quotation marks and citations omitted). Accordingly, a plaintiff could succeed on a retaliation claim despite the absence of a cognizable claim under Title I or Title II.

The Second Circuit stated, "it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA." Sarno, 183 F.3d at 159.  According to the Supreme Court, an employment action is "materially adverse" if it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 68 (2006) (Title VII).  According to Burlington Northern , in determining whether a materially adverse action has occurred, courts must apply an objective standard and examine "the circumstances of the particular case." Id. Furthermore, "it is important to separate significant from trivial harms." Id. "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006).

12

### a. Denial of Promotion

Plaintiff appears to allege that she was denied a promotion in violation of Title V. According to the Amended Complaint, the only promotion allegedly denied to Plaintiff occurred on or about June 2001.  See Am. Compl. ¶ 24-26.  In the 2005 Order, this Court applied New York's three-year statute of limitations for ADA claims and found that this claim is barred because it accrued prior to September 27, 2001.  See 2005 Order.  Therefore, the denial of promotion claim is barred.

### b. Treatment by Defendant Fiorello

Plaintiff claims that around September 2001, Fiorello "began treating plaintiff differently from other workers, discriminating against and harassing plaintiff."  Am. Compl. ¶¶ 30-33.  To the extent that this allegation would be considered a continuous course of action and therefore not barred by the statute of limitations as explained in the Court's 2005 Order, it is nevertheless barred because it does not allege retaliation for a protected activity under Title V.  Plaintiff appears to claim the allegedly wrongful treatment was in retaliation for her June 12, 2001 discrimination complaint, which was based on age discrimination and the interview process for a job, and on alleged retaliation for a 1999 grievance she had filed, which is not described in any greater detail.  Am. Compl. ¶ 27.  None of these activities fall within the scope of Title V, and Plaintiff does not even attempt to connect Fiorello's treatment of her with an ADA-protected activity.  In fact, Plaintiff had not filed any discrimination complaints or reasonable accommodation requests, which are protected activities, by this point.  Therefore, a Title V claim cannot be sustained based on these alleged acts by Fiorello.

13

### c. Leave Status

In the Amended Complaint, Plaintiff alleges that after submitting a request for a reasonable

accommodation on January 8, 2002, Defendants Dammer, Dominski, and Guinane retaliated against

her by placing her on involuntary leave.  In her deposition testimony, Plaintiff stated that her basis

for believing she was being placed on involuntary leave was a letter, dated January 16, 2002, signed

by Defendant Dammer, and a letter, dated January 22, 2002, signed by Matt Guinane.  Brady Dep.

at 84-86.  While still viewing all of the evidence in the light most favorable to Plaintiff, reviewing

evidence about the context of these letters is necessary for an accurate evaluation of whether this

claim can survive the Motion for summary judgment.

In this reasonable accommodation request, Plaintiff had asked to be transferred to a

supervisor other than Defendant Ann Fiorello due to her anxiety disorder and hypertension, which

she believed was being exacerbated by Fiorello.  Brady Dep. at 83.  When she made this request on

January 8, 2002, Plaintiff had been absent from work since December 27, 2002, and had been asked

to submit medical documentation for her absences.  Plaintiff submitted letters from her treating

physicians with the reasonable accommodations request, and these letters were used by her

employer to satisfy the outstanding request for medical documentation.  The letter from Dammer,

which Plaintiff claims is one basis for her belief that she was placed on involuntary leave, does not

state or suggest the leave was involuntary.  Brady Dep. Exh. 7.  The letter states that Plaintiff was

authorized to use sick leave for up to three months after requesting sick leave and based on the

medical documentation she had submitted in support of her request.  Id.; Brady Dep. at 84-86.

Given its wording and the fact that at the time Plaintiff received the letter, she was engaged in an

extended period of absences that she had initiated and for which she had provided medical

documentation, the letter cannot support a finding that Plaintiff believed she was being placed on involuntary leave upon receiving this letter.

The letter from Guinane that Plaintiff refers to as a basis for alleging the leave was involuntary appears to be the Agency Request for Medical Examination form, which is submitted as Exhibit 1 to Defendant Guinane's deposition. Guinane Dep. Exh. 1 (Dkt. 57, Attach. 14). This is not so much a letter, but a standardized form. This form, completed by Defendant Guinane, is dated January 22, 2002. Id. In completing this form, Guinane indicated that the legal authority for requesting the medical examinations was both the section 72 Involuntary Leave provision and the ADA. Id. at 1. According to section 72, an employee may be placed on an involuntary leave of absence "immediately" if believed to be "a potential danger to persons or property or [she] would severely interfere with operations," and then the employee may be required to submit to a medical examination to assess the employee's fitness for work. N.Y. Civ. Serv. Law § 72 (5). Guinane testified that it was also Department practice to select the "Involuntary Leave" box if an examination was being ordered to evaluate whether an employee should be placed on involuntary leave, which was the circumstance in this instance.[5] Guinane Dep. at 67. Defendant Guinane testified that this form is addressed and sent directly to Employee Health Services, which performs the exam, and the employee is provided with a copy. Guinane Dep. at 65-67. An employee being

---

[5] Guinane testified that he erred in ordering the section 72 examination to the extent that it was Department policy not to combine an ADA examination request with a section 72 examination because if the examination concluded that the employee should be placed on involuntary leave, it could lead to an inference of discrimination. Guinane Dep. at 34-50. He also testified that he had not previously been made aware of this Department policy. Id. This is immaterial to the present issue, which is whether Plaintiff was placed on involuntary leave. Furthermore, Plaintiff testified that the examining doctors recommended that she was fit and should not be placed on involuntary leave.

placed on involuntary leave would receive a letter addressed and sent directly to her stating she was being placed on leave.  Id.  This form does not state that Plaintiff is being placed on involuntary leave or appear to carry the authority to change her employment status; it is a "Request for Medical Examination."  Guinane Dep. Exh. 1.  Guinane testified that he ordered the section 72 examination to evaluate Plaintiff's fitness, based on her supervisors' concerns about her ongoing absences, but that he did not intend to be placing her on leave and was aware that she had initiated the ongoing period of absences.  Plaintiff has produced no evidence suggesting that she was placed on involuntary leave, and Defendant Guinane testified that she was never placed on involuntary leave. Id. at 48-50.  To the contrary, the uncontroverted proof before the Court is that Plaintiff had initiated the absences, submitted medical documentation to gain permission for additional absences and, prior to receiving the Medical Examination form, received a letter from Dammer explicitly stating that leave was being authorized per her request.  Therefore, the Court finds that no reasonable factfinder could conclude that Plaintiff was placed on involuntary leave.

### d.  Section 72 Examination

Plaintiff also alleges that she was subjected to the section 72 examination in retaliation for making the reasonable accommodation request.  Requiring an employee to submit to a section 72 exam does not, without more, constitute a "materially adverse change," even if the request is inappropriate.  Baum v. Rockland County, 161 Fed. Appx. 62, 64 (2d Cir. 2005) (summary order); see also Jackson v. City Univ. of New York, 2006 U.S. Dist. LEXIS 43221, *10 (S.D.N.Y. June 23, 2006).  As stated by the Second Circuit, "to be materially adverse a change in working conditions must be more disruptive than a mere inconvenience . . . ."  Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted).  In this case, while she was taking

16

sick leave and after filing a reasonable accommodation request, Plaintiff was notified by letter from Defendant Dammer, the Director of Human Resources Management, that the Department was arranging for her to take a section 72 examination and that she would be contacted with appointment details.  Brady Dep. Exh. 7.  She was subsequently notified of appointment times by letter from Defendant Guinane.  Brady Dep. at 85.  Plaintiff has not suggested any actual impact on the conditions of Plaintiff's employment or sick leave, or on the conditions of the examination, as a result of Guinane's selection of this box or of the section 72 examination.  As a result, no reasonable fact finder could conclude that this satisfies the requirement of an adverse action for purposes of a Title V claim.  In short, Plaintiff has not presented any evidence that the examinations were anything other than an inconvenience.  Based on the facts alleged by Plaintiff, it cannot be inferred that the section 72 examination was materially adverse.

### e.  Meetings with Union Representative

Furthermore, Plaintiff's Amended Complaint alleges that after she was granted the transfer to a new supervisor as a reasonable accommodation on February 14, 2002, she was "restricted from meeting with her union representative, Larry Gorski, except for lunch and break times," and that her meetings with Gorski were documented by Defendant Adsit-Vassari.  Am. Compl. ¶¶ 70, 74.  Plaintiff's deposition testimony revealed a few reasons that this claim must fail.  First, Plaintiff stated that she knew of no times when Gorski was ever actually prevented from meeting with her during the workday.  Brady Dep. at 106.  Second, Plaintiff stated that she had not expected to be able to meet with Gorski during the workday, and that they had already made a "conscious decision" not to meet in the office during the workday before the restriction was put in place.  Id. at 105-106.  Third, Plaintiff stated at her deposition that, to her knowledge, the restriction was a result

of a supervisor's dislike of Gorski, not related to retaliation for her reasonable accommodation request. Id. at 105.

As to Plaintiff's allegation that Defendant Adsit-Vassari began to document her meetings with Gorski, Plaintiff has not produced evidentiary support for this allegation.  In her deposition testimony, Plaintiff clarified that this allegation is based on her belief that a supervisor or various supervisors documented about four instances in which Gorski stopped by her desk to say hello.  Id. at 109-110.  However, she admitted in her deposition that she did not know who documented these visits, or how the visits were documented, and she stated that she learned of the supposed documentation of these visits by fourth hand information.  Id. at 109-111.  Because Plaintiff has failed to assert legally cognizable evidence in support of this claim, it fails to survive the instant Motion for summary judgment.

### f. Counseling Memorandum

Plaintiff also alleges that, in retaliation for filing the May 24, 2002 discrimination complaint against Defendant Guinane with the Department's Affirmative Action Office, Defendant Guinane "attempted to persuade plaintiff's new supervisors to discipline her for purported inappropriate use of work time and equipment, and possibly email abuse and failure to perform the duties of her job." Am. Compl. ¶ 89.  Plaintiff further claims that when her immediate supervisor refused to do so, on or about June 17, 2002, Defendant Dominski, who was Guinane's supervisor, "counseled" her with a written memo for email abuse and inappropriate use of Department resources. Id. ¶¶ 90-91.  The use deemed inappropriate was her use of these resources to pursue the restoration of leave credits. Brady Dep. at 119-120.  Plaintiff claims that her supervisor, Schumacher, told her that Guinane "felt it was abuse of the e-mail system and he felt that they should discipline me." Id. at 120.  Notably,

Plaintiff does not argue that Department policy allowed her to use email and other resources for these purposes, and also she does not argue or present evidence that she was singled out while other employees were allowed to use resources for such purposes.  Although Plaintiff asserted at her deposition that her new supervisors, Michael Bond and Michael Schumacher, told her Guinane wanted them to counsel her and that they didn't agree and thought she was doing well, this is hearsay testimony and therefore not legally sufficient evidence.  See H. Sand. & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-455 (2d Cir. 1991).  The other fact Plaintiff alleges in support of this claim is that she stopped using e-mail for these purposes when she learned by word of mouth that Guinane was considering writing a letter to her regarding this issue, and the letter nevertheless issued shortly thereafter.  Brady Dep. at 122-123.  Given that she does not allege she was allowed to use the resources, this clearly does not constitute an adverse employment action.

Furthermore, Plaintiff stated at her deposition that although she called the letter a "counseling memo," "it wasn't placed in my personal history folder" and she was told by her supervisors that the letter was not a disciplinary action.  Id. at 121.  Plaintiff testified that she was provided a copy and that a copy was placed in a file that "has your evaluation in it, and maybe letters of compliment and/or letters of not so compliment.  And it's just, your supervisor takes it and uses it each time he does an evaluation."  Id. at 121-122.  The Court has examined this memorandum notes that it does no more than direct Plaintiff to "cease any further use of e-mail or any other office equipment or resource in pursuing complaints against the Department or its employees," and warns that "[y]our failure to follow this directive. . . may result in disciplinary action."  Brady Dep. Exh. 10.  On its face, the memorandum fails to constitute an adverse action under the standard delineated by the Supreme Court in Burlington Northern, and therefore this

allegation does not constitute a cognizable Title V claim.  See Burlington Northern, 548 U.S. at 67

(stating that actionable retaliation requires "injury or harm.").

### g.  Responding to Plaintiff's Questions

Plaintiff also asserts that after she filed the May 24, 2002 discrimination complaint against

Defendant Guinane, Labor Relations "advised plaintiff that they would no longer respond to her

questions.  No other employees are subject to such treatment."  Am. Compl. ¶ 92.  At her

deposition, Plaintiff was asked how she was advised that they would not respond to her questions.

Brady Dep. at 123.  She cited the June 17, 2002 memorandum from Defendant Dominski directing

her not to use Department resources or email.  Id. at 123-124; Exh. 10.  The relevant paragraph of

the memorandum states the following:

> Over the past several months you have used the Department's electronic mail system
> to send a number of e-mails regarding restoration of your leave accruals and the
> Employee Health Service examination you underwent in January.  Be advised that
> there will be no further replies regarding these matters.  If you remain unsatisfied
> with the responses offered thus far, you should avail yourself of the grievance
> process.

Brady Dep. Exh. 10.  Far from constituting retaliation, this paragraph seems on its face to be a

proper communication to Plaintiff of the avenue available to her to further pursue her complaint.  In

any event, assuming for purposes of this Motion that this statement is motivated by a desire to

retaliate against Plaintiff, it is not actionable because it does not constitute materially adverse

action.  See Burlington Northern, 548 U.S. at 68 ("We speak of material adversity because w4e

believe it is important to separate significant from trivial harms.").  On the face of this

memorandum, Plaintiff is not being denied anything other than additional informal communications

and is being directed to utilize a formalized grievance process that exists to ensure Plaintiff's

allegations are formally noted and addressed.

### h. Standards Applied by Defendant Adsit-Vassari

Additionally, Plaintiff claims that "[t]hroughout the course of events described herein defendant Adsit-Vassari held plaintiff to a standard different from all other employees, including, but not limited to denying plaintiff the right to have any visitors at her work station."  Am. Compl. ¶ 116.  At her deposition, Plaintiff was asked the following question: "To your knowledge, was any particular visitor stopped from seeing you at that office while you were under Ms. Adsit-Vassari?"  Brady Dep. at 146.  She answered: "Not that I know of."  Id.  Accordingly, this much of the claim fails to constitute actionable retaliation under the Burlington Northern standard.  See Burlington Northern, 548 U.S. at 67-68.

Plaintiff also testified that she believed Adsit-Vassari held her to a different standard from all other employees because she orally requested an exemption from traveling and "[Adsit-Vassari] had given a couple of technicians exemption from traveling, and she refused me."  Brady Dep. at 141.  This claim fails because she further testified that she was granted a reasonable accommodation request for exemption from non-local travel, and in the interim between making the informal oral request and receiving the formal accommodation, she was not assigned to travel.  Id. at 141-142, 149.  Therefore, this does not constitute actionable retaliation under Burlington Northern.  See Burlington Northern, 548 U.S. at 67-68.

### i. Assignment of New Duties

Another assertion Plaintiff makes is that after she made a reasonable accommodation request to limit her travel assignments to local travel, Defendant Adsit-Vassari "retaliated . . . by assigning plaintiff new duties specifically involving the matter from which plaintiff requested relief."  Am.

21

Compl. ¶ 118; Brady Dep. at 142.  Contrary to this claim, however, Plaintiff testified that she was never actually required to travel after making the request.  Brady Dep. at 149.  Plaintiff stated that Adsit-Vassari told her supervisor, Schumacher, to assign her to travel, but this is legally insufficient evidence and, in any event, the claim fails because merely asking Plaintiff's supervisor to assign travel does not, in this situation, constitute materially adverse action.  Id. at 148-149; see also Burlington Northern, 548 U.S. at 67-68.

### j.  Refusal to Speak to Plaintiff

Plaintiff claims Defendant Adsit-Vassari retaliated against her for filing a reasonable accommodation request by "refusing to speak to plaintiff."  Am. Compl. ¶ 119.  Plaintiff stated at her deposition that after her transfer to the Sales Tax Desk Audit, she was supervised directly by Michael Schumacher.  Brady Dep. at 103.   Schumacher was supervised by Michael Bond, and Bond was supervised by Carla Adsit-Vassari.  Id.  She said that she had never dealt with Adsit-Vassari prior to this assignment, and initially Adsit-Vassari was "cordial" to her.  Id. at 103, 153.  Plaintiff further stated that in the time she worked with Adsit-Vassari, "[s]he was always professional"in conversations regarding her job-related issues.  Id. at 154-155.  At her deposition, Plaintiff stated that this claim was limited to the assertion that, concerning conversations unrelated to work topics, "sometimes she would talk to me, other times she wouldn't."  Id. at 154.  According to Plaintiff's deposition testimony, "in that office, they tried to make it a family-like atmosphere. And she was on the floor a lot, and they'd have ice cream day, things like that.  And she was–tried to be nurturing to a lot of the employees.  So I would see a difference in her demeanor when she saw me."  Id. at 155.

To constitute actionable retaliation, "a plaintiff must show that a reasonable employee would

have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. The Supreme Court explained that "the significance of any given act of retaliation will often depend upon the particular circumstances," but also warned that "petty slights" such as "snubbing by supervisors and co-workers are not actionable," and that the subjective reaction of an unusually sensitive plaintiff must not affect a court's analysis of whether an action is materially adverse. Id. at 68-69 (internal quotation marks omitted) (emphasis in original). Applying the objective standard described in Burlington Northern, it is obvious that the alleged refusal of Adsit-Vassari to speak to Plaintiff does not rise to the level of a materially adverse action. In fact, this allegation, which is assumed true for purposes of the present Motion, describes incidental social interactions, unrelated to job functions, that the Supreme Court has precluded from supporting a retaliation claim.

### k. Material Placed in Plaintiff's Working File

Additionally, Plaintiff asserts that Defendant Adsit-Vassari "retaliated against plaintiff for requesting a reasonable accommodation . . . by intentionally placing inappropriate material, including, but not limited to information pertaining to plaintiff's Americans with Disabilities Act material, in plaintiff's 'working file.'" Am. Compl. ¶ 120. Plaintiff testified that the "inappropriate material" was "the granting of my reasonable accommodation," and that the "working file" was "the personal file that they had for your evaluations." Brady Dep. at 155. She stated that her basis for asserting that it was improper to keep the granting of a reasonable accommodation request in the working file was that "I looked into it and it's supposed to be kept in a separate file." Id. at 156. She stated that "supervisors" have access to the working file, and that her supervisor allowed her to

look at her working file.  Id.  In contrast to the assertion in the Amended Complaint, she testified

that "I don't think she placed it in the file to retaliate.  I think she refused to remove it."  Id. at 157.

Furthermore, Plaintiff testified that the material was removed from the file, and she did not allege

that there was any harm caused by having that material in that file.  Id.  In the absence of harm,

Plaintiff has no retaliation claim under Title V.  See Burlington Northern, 548 U.S. at 67-69.  A

separate, independent reason this claim fails is that, under 29 C.F.R. § 1630.14(c)(1), an employer is

not forbidden from keeping information limited strictly to "the granting of [a] reasonable

accommodation," in a "working file."[6]

### l.  Other Allegedly Retaliatory Acts

Plaintiff makes other accusations of retaliatory action taken against her by various

Defendants, but these acts are not alleged to be in retaliation to the exercise of a right protected by

the Americans with Disabilities Act.  See generally Am. Compl.  Therefore, those allegedly

retaliatory acts are not relevant to her Title V claim.

## B.  First Amendment

### 1.  Freedom of Speech

Plaintiff asserts that Defendants violated her First Amendment rights by committing various

acts of retaliation against her for engaging in protected speech.  Am. Compl. ¶¶ 139, 141.  A public

employee making a First Amendment claim of employment retaliation under § 1983 must show

---

[6] § 1630.14(c)(1) states that "information obtained under [a medical examination ordered by the employer] regarding the medical condition or history of any employee shall be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record, except that: (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations . . . ."  29 C.F.R. § 1630.14(c)(1).

that: (1) her speech addressed a matter of public concern; (2) she suffered an adverse employment decision; and (3) a causal connection exists between her speech and that adverse employment determination, so that it can be said that her speech was a motivating factor in the adverse employment action. Cioffi v. Averill Park Central School Dist. Bd. of Education, 444 F.3d 158, 162 (2d Cir. 2006). Even if a plaintiff demonstrates each of these elements, the claim is subject to several defenses that may be asserted by the public employer seeking to prevail on a motion for summary judgment. Id.

The decision of whether speech is entitled to protected status is a matter of law for the district court. Grillo v. New York City Transit Authority, 291 F.3d 231, 235 (2d Cir. 2002). Describing the first prong of a prima facie First Amendment claim, the Second Circuit explained that, "[t]o be protected, the speech of a public employee . . . must have been made as a citizen on matters of public concern rather than as an employee on matters of personal interest." Id. "The requirement that the speech at issue involve matters of public concern 'reflects both the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991) (quoting Connick v. Myers, 461 U.S. 138, 143 (1983)). "Generally, speech on any matter of political, social, or other concern to the community is protected by the First Amendment." Cotarelo v. Village of Sleepy Hollow Police Dept., 460 F.3d 247, 252 (2d Cir. 2006) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-148. A free speech claim fails as a matter of law when "there is no

evidence that these statements were uttered for any other reason than to protect [plaintiff's] own rights or to air his personal grievances."  Grillo, 291 F.3d at 235-236.

As explained in the Court's 2005 Order, to the extent that Plaintiff premises her First Amendment claim on speech requesting reasonable accommodations, the claim fails because it is clear that those requests were explicitly made to protect or advance personal interests and do not constitute matters of public concern.  See 2005 Order at 20.

Plaintiff's discrimination complaints and grievances require separate consideration of whether any of the individual complaints are entitled to protected status.  In instances where the employee's speech takes the form of a discrimination complaint against a public employer,  the Second Circuit distinguishes between complaints that "concern discrimination problems generally and were not limited to instances affecting only [plaintiff]," and complaints in which a plaintiff's "primary aim was to protect her own reputation, not the public welfare."  Cotarelo, 460 F.3d at 252. The former, but not the latter, are matters of public concern entitled to First Amendment protection. Id.; see also Konits v. Valley Stream Cent. High School Dist., 394 F.3d 121, 125 (2d Cir. 2005) ("By our decision today, we resolve [the district courts'] split and hold that any use of state authority to retaliate against those who speak out against *discrimination suffered by others* . . . can give rise to a cause of action under 42 U.S.C. § 1983 and the First Amendment.") (emphasis added).

During her three-day deposition, Plaintiff did not assert that any of her grievances, complaints, or any other speech, involved the rights or interests of anyone other than herself.  See, e.g., Brady Dep. at 180-182.  Moreover, the Court has examined the discrimination complaints and grievances Plaintiff is relying on, and finds that none of these documents contain allegations that constitute a matter of public concern.  See Brady Dep. Exhs. 2, 3, 9, 12, 13, 16, 17.  Each

26

discrimination complaint and grievance is clearly intended to protect her own personal interests. Therefore, the speech upon which Plaintiff has premised her First Amendment claim is not entitled to protected status.

Furthermore, to the extent that Plaintiff alleges a First Amendment violation based on speech other than her reasonable accommodation requests, she asserts each of the same acts by Defendants to satisfy the requirement of an adverse employment action as she asserts in her Title V claim: "[t]he aforementioned acts of defendants of retaliating against plaintiff for filing grievances and complaints, as well as refusing to respond to further complaints or grievances were undertaken to punish plaintiff for her exercise of free speech and constitute a deprivation of her freedom of speech. . . ." Am. Compl. ¶ 141; see also id. at ¶ 139. The adverse employment action element of First Amendment retaliation claims is judged according to a standard "equivalent to the standard set forth in Burlington Northern." Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 227 (2d Cir. 2006). In analyzing Plaintiff's Title V claim, the Court has already explained that there is no evidence in the record that could allow a reasonable jury to find that Plaintiff suffered an adverse employment action based on the evidence she has presented in support of the following allegations: the denial of a promotion, treatment by Defendant Fiorello, the status of her January 2002 leave, the section 72 examination, meetings with her union representative, the counseling memo, Defendants' responses to Plaintiff's questions, the standards imposed by Defendant Adsit-Vassari, the assignment of new duties, Defendant Adsit-Vassari's refusal to speak to Plaintiff, and the material placed in Plaintiff's working file. See *supra* III.A.3.a.-k. Therefore, Plaintiff's First Amendment claim fails, insofar as it involves these allegations, for the additional reason that Plaintiff has not proffered evidence that could satisfy the adverse action requirement.

### 2. Freedom of Association

Plaintiff's second cause of action asserts that Defendants violated her freedom of association by preventing her from meeting with Lawrence Gorski, her union representative, during the workday.  Am. Compl. ¶ 70, 134; Brady Dep. Exh. 21 at 5-6.  For more details about this factual allegation, see *supra* at 10.

"[A] public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern." Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004).  As explained *supra*, Plaintiff testified that she does not know of any instances in which she was specifically deprived of meeting with the union representative.  See *supra* at 10.  There is no suggestion that these meetings touched on anything other than her personal interests.  Accordingly, Defendants are entitled to dismissal of this claim.

## C. Due Process

### 1. First Cause of Action

Plaintiff's first cause of action alleges that Defendants violated her due process rights through "adverse employment actions taken against plaintiff, such as refusal to promote and refusal to permit her reasonable access to union representatives, together with damage to her reputation caused by such actions as . . . falsely accusing plaintiff of wrongfully accessing confidential data . . . ."  Am. Compl. ¶ 133.

In the Court's 2005 Order, the § 1983 claim based on denial of promotion was dismissed on statute of limitations grounds.  See 2005 Order at 13-14.  Nothing suggests this issue should be revisited by the Court.  As to Plaintiff's second factual allegation in support of this claim, as discussed *supra*, a claim based on the alleged denial of access to her union representative cannot

survive summary judgment because she has failed to proffer evidence that she was denied access.

See *supra* at 10.

Plaintiff's also attempts to ground the due process claim on alleged damage to her reputation caused by an allegedly wrongful accusation that she accessed confidential data.  Addressing a similar claim,  the Second Circuit stated

> [a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protection of the Due Process Clause or create a cause of action under § 1983. . . . Loss of one's reputation can, however, invoke the protections of the Due Process clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment.

Patterson v. City of Utica, 370 F.3d 322, 329-330 (2d Cir. 2004) (internal citations omitted).

Plaintiff has not offered evidence of any tangible interest that she was deprived of along with the alleged damage to her reputation.  In fact, she testified that she was not disciplined as a result of the accusation.  Brady Dep. at 36-37.  Accordingly, she cannot maintain the due process claim.

**2.  Eleventh Cause of Action**

Plaintiff's eleventh cause of action asserts "[t]he aforementioned acts of defendants in prohibiting and preventing plaintiff from fully enjoying and partaking of the rights, benefits, and emoluments of her employment constituted a deprivation of property . . . ."  Am. Compl. ¶ 143. This appears to be entirely redundant of Plaintiff's first cause of action which, as explained, must be dismissed.  To the extent that this cause of action is intended to be independent, the Court sees no basis for the claim, and Plaintiff has not, at any point in this action, proffered any particular facts in support of this particular claim.  See, e.g., Brady Dep. Exh. 21 at 16.  Therefore, the eleventh cause of action is also dismissed.

**D.  Equal Protection**

In her twelfth cause of action, Plaintiff alleges that Defendants violated her equal protection rights by "treat[ing] plaintiff differently than all other employees with regard to the terms and benefits of her employment and prohibiting and preventing plaintiff from fully enjoying and partaking of the rights, benefits and emoluments of her employment. . . ."  Am. Compl. ¶ 21.  In opposing the Motion for summary judgment, Plaintiff argues that she was denied equal protection because she was the only employee who was: "subject to an unwritten and previously unknown requirement that any and every absence due to illness (even to the point of leaving work ill) required a doctor's note"; "denied the assistance of her supervisor";  "subject to a new requirement that Ann Fiorello be located and informed in person if plaintiff ever were to become ill at work"; "restricted from meeting with her union representative"; "subject to discipline by upper level manage[r]s when plaintiff's own supervisor indicated she had committed no act warranting discipline"; "subject to a separation from service exam as a result of filing a reasonable accommodation"; and "placed on involuntary leave for filing a reasonable accommodation."  Pl.'s Response at 8-9.

The Supreme Court recently announced that "the class-of-one theory of equal protection does not apply in the public employment context."  Engquist v. Oregon Department of Agriculture, --- U.S. ---, 128 S.Ct. 2146, 2151 (2008).  Since Plaintiff is alleging different treatment as opposed to discrimination based on membership in a particular class, this is a classic "class-of-one" case, and the claim must be dismissed.  See id.

**E.  Conspiracy**

Plaintiff's thirteenth cause of action alleges Defendants committed conspiracy by "acting in concert to deprive plaintiff of her constitutional and statutory rights and preventing plaintiff from

fully enjoying and partaking of the rights, benefits, and emoluments of her employment."  Am. Compl. ¶ 145.

To prevail on a § 1983 conspiracy claim, Plaintiff must prove "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).  To survive summary judgment, direct evidence of each element is not required, but Plaintiff must at least proffer circumstantial evidence from which a fact finder could reasonably infer the existence of a conspiracy.  See id.; Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994).

As already discussed, Plaintiff has failed to demonstrate a genuine dispute over whether any Defendant subjected her to the deprivation of a constitutional right.  Accordingly, she cannot maintain her conspiracy claim against Defendants.  See Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998) ("There was no deprivation of a federal constitutional right, and therefore there can be no civil rights conspiracy to deprive that right.").

**F.  State Law Claims**

Plaintiff also asserts claims arising under the New York Constitution and Human Rights Law, as well as several state tort claims.  Since all of the federal claims fail to survive the instant Motion, the Court declines to exercise supplemental jurisdiction over the remaining state claims. See 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

Based on the foregoing discussion, Defendants' Motion for summary judgment is granted in its entirety.  Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 57) is **GRANTED**; and it is further

**ORDERED,** that the case is **DISMISSED in its entirety with prejudice**, **except for Plaintiff's state tort claims and claims arising under the New York Constitution and Human Rights Law, which are dismissed without prejudice** to their renewal in an appropriate state forum; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.


**IT IS SO ORDERED**.

DATED:       August 13, 2008
             Albany, New York


_____
Lawrence E. Kahn
U.S. District Judge

32